## Musulin v. Redevelopment Authority of City of Johnstown

*Marlen B. Stephens, Maurice Shadden,* and *Gleason & Krumenacker,* for plaintiffs.

*Gilbert E. Caroff,* for defendant.

WOLFE, J., August 28, 1961.—In each of three cases now before the court, the Redevelopment Authority of the City of Johnstown exercised its power of eminent domain over certain parcels of real estate in the city. Viewers were appointed and awards made, and appeals from those awards are now listed for trial by jury in this court.

After the cases appeared on the trial list, plaintiff-owners notified defendant-authority of their intention to take the depositions of certain individuals, under Pennsylvania Rule of Civil Procedure 4007. One of these was the secretary of the authority and the others were real estate brokers who had done appraisal work for the authority at various times after 1954. The notices each stated that the subject matter of the deposition would be the appraisals and valuations which had been placed upon the condemned properties by the real estate brokers. Upon receipt of these notices, defendant-authority moved for a protective order under Pa. R. C. P. 4012, asking that the proposed discovery be forbidden.

In its motion, defendant-authority contended that the proposed discovery would "disclose the existence or location of reports, memoranda, statements, information or other things made or secured by any person or party in anticipation of litigation or in preparation for trial. . . ." If defendant's argument is correct, the discovery is prohibited by Pa. R. C. P. 4011, a part of which is quoted above.

In Construction of Vine Street Extension, 18 D. & C. 2d 115, it was held that information prepared by the Commonwealth in condemnation cases falls within the scope of "anticipation of litigation," even though litigation has not been threatened or instituted. Plain-

tiffs have argued that the information as to appraisals and valuations which they seek was not secured by defendant-authority in anticipation of litigation, because at least some of these appraisals were made for the purpose of determining the overall cost of the redevelopment project and not the potential acquisition price of the individual properties involved.

At a hearing upon the motion for the protective order, it was testified that the Redevelopment Authority of the City of Johnstown was organized prior to 1954. Initially, it decided to redevelop an area including the properties of plaintiffs and others. On January 21, 1954, it then entered into what was described at the hearing as the "Survey and Planning Stage" of the proposed redevelopment project. To complete this stage of the project, the authority employed real estake brokers to make appraisals of the properties within the project area, including those belonging to plaintiffs. This information was used in arriving at an estimated overall cost of the project, in order to determine the extent to which the United States government would participate by financial contributions. As the witnesses at the hearing explained, in the initial stages of any qualified redevelopment project, the Federal government would determine the amount it would contribute to the overall cost on a percentage basis. To arrive at the figure for those dollar contributions, the Federal government required, and the local authority furnished, a figure for the estimated overall cost, which included the appraised values of all the properties involved.

Later, in 1959, a second stage of the redevelopment project, called the "Final Project Stage," was reached. At this time, further real estate appraisals were made for the purpose of assisting in the acquisition of plaintiffs' properties by purchase or condemnation, whichever was required.

Plaintiff-owners now contend that, until "the final project stage" was reached in 1959, the appraisals were made only for the purpose of estimating the overall cost of the project and thus determining the extent of Federal participation. They argue that such appraisals, therefore, could not be considered reports, memoranda, statements, information or other things made or secured in anticipation of litigation.

At the hearing on the motion, it was shown that, beginning in 1954, the real estate brokers employed for the purpose of appraisal entered into a written contract with defendant-authority which contained the following paragraphs, among others:

"WHEREAS, the local public agency proposes to acquire certain property hereinafter referred to as the Project Area (more particularly described hereinafter) and desires to obtain an appraisal of each parcel in the Project Area, *including all improvements, structures, appurtenances, or other elements of value which are recognized by the courts in eminent domain proceedings;* . . .

"1. The Appraiser agrees to:

"a. Make a personal inspection of each parcel in the Project Area *including all improvements, structures, appurtenances, or other elements of value thereon or thereunto belonging which are recognized by the courts in eminent domain proceedings* and to advise the Local Public Agency, in a written report, of his opinion of the fair market value of each such parcel. . . .

"3. The report shall, among other things, contain the following:

"a. The Appraiser's opinion of the fair market value of each parcel *including improvements, structures, appurtenances, or other elements of value recognized by the courts in eminent domain proceedings.* . . .

"g. In the event of severance, the Appraiser shall state his opinion of the fair market value of the whole, the fair market of the part not taken; and the value of any special benefits accrued to the part not taken which under local law may be taken into consideration; . . .

"5. *In the event that the testimony of the Appraiser is required in any legal proceeding* in connection with the local public agency's acquisition of the property herein referred to, *the Appraiser agrees to appear as a witness on behalf of the Local Public Agency* . . ."

From the above provisions of the contract, it appears that from the time the contract was first entered into it was contemplated that there might be eminent domain proceedings, and the appraiser involved agreed to determine the fair market value of the properties in accordance with the rules relating to such proceedings and to testify as to his findings "in any legal proceedings" which might follow. The information gathered by the appraisers and embodied in any reports they might make was, therefore, "made or secured . . . in anticipation of litigation." It may be that, in the early stages of the project, the primary use of this information was to determine overall project cost and not to assist in the acquisition of individual properties by purchase or eminent domain proceedings. At the same time, however, it was expressly foreseen that this information might be used in condemnation proceedings, and the appraisers were specifically required to consider all "elements of value" recognized by the courts in such proceedings. Although it is understood that other stages of the project would have to be completed before acquisition of the properties could begin, and, therefore, condemnation would be postponed to an uncertain future date, the possibility of litigation was foreseen. To provide against that possibility, the contract required the real

estate appraisers to consider all the elements of value which would be relevant in eminent domain proceedings and bound them to testify if their testimony should be required. Therefore, such reports, memoranda or statements which they made, or information which they secured and which may now be in their possession, or the possesion of the secretary of defendant-authority, were made or secured in anticipation of litigation. Under Pennsylvania Rules of Civil Procedure, the other party to this litigation is not entitled to a discovery which would disclose the existence or location of such things or would obtain them from defendant. For the above reasons, defendant authority is entitled to protective orders forbidding the discovery contemplated by plaintiffs.